UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
ANDREW WILLIAMS,                         :     ECF CASE

                                                                                           05 Civ. 8052 (WCC)

                  Plaintiff,    :

                                                                                         **AMENDED**

    - against -                           :     **OPINION**

                                                                                            **AND ORDER**

THE CITY OF MOUNT VERNON, et al.,        :

                  Defendants.   :

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                                    EBANKS & SATTLER, LLP
                                    **Attorneys for Plaintiff**
                                    20 Vesey Street, Suite 503
                                    New York, New York 10007

ADAM B. SATTLER, ESQ.

    Of Counsel


                                    HELEN M. BLACKWOOD
                                    CORPORATION COUNSEL
                                    **Attorneys for Defendants The City**
                                      **of Mount Vernon, The Mount**
                                      **Vernon Police Department and**
                                      **Mount Vernon P.O. Conley in his**
                                      **Individual and Official Capacities**
                                      City Hall
                                    One Roosevelt Square
                                    Mount Vernon, New York 10550

HINA SHERWANI, ESQ.

    Of Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Copies E-Mailed to Counsel of Record

**CONNER, Senior D.J.:**

Plaintiff Andrew Williams brings the instant action against defendants: (1) the City of Mount Vernon (the "City"); (2) the Mount Vernon Police Department (the "Department"); (3) former Mount Vernon Police Commissioner Bernice Kennedy; (4) Mount Vernon Police Officer Conley; (5) former Mount Vernon Police Officer DellaDonna; (6) Mount Vernon Police Officers John Doe 1-5, unknown police officers employed by the Department; (7) Westchester County District Attorney Jeanine Pirro; (8) Assistant Westchester County District Attorney Mark Garreto; and (9) Assistant Westchester County District Attorney Robert F. Docherty, Jr. Plaintiff's inartful Verified Complaint ("Complaint") appears to assert claims for: (1) false arrest; (2) false imprisonment; (3) use of excessive force; and (4) malicious prosecution in violation of his Fourth, Fifth and Fourteenth Amendment rights and 28 U.S.C. §§ 1981, 1983 and 1985(3). In addition, plaintiff asserts parallel claims under Article I, sections 1, 5, 6, 11 and 12 of the New York State Constitution as well as a New York State law claim for intentional infliction of emotional distress.

As an initial matter, this Court notes that defendants Kennedy and DellaDonna have not been served by plaintiff in accordance with the time limits provided by FED. R. CIV. P. 4. Consequently, the claims against defendants Kennedy and DellaDonna are dismissed without prejudice. *See* FED. R. CIV. P. 4(c), (m). Also, the claims against defendants Pirro, Garreto and Docherty were dismissed with prejudice by stipulation dated November 22, 2005.

Defendants the City, the Department and Conley (collectively, the "defendants") now move to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motion is granted in part and denied in part. In addition, this Court dismisses without prejudice the claims against defendants Police Officers John Doe 1-5, as

1

the Complaint fails to allege any facts indicating that any police officers other than Conley and DellaDonna were involved in the incidents alleged therein.

## BACKGROUND

The following facts are taken from the Complaint, unless otherwise noted. On September 16, 2004, plaintiff Williams was working at the Mount Vernon Western Beef grocery store stocking shelves when he was approached by two men later identified as Police Officers Conley and DellaDonna. (Complt. ¶ 17.) These two officers were in plain clothes rather than in police uniforms and bore no visible police insignia.[1] (*Id.*) As the pair neared plaintiff, the Complaint alleges one of the officers said "Tim," and Williams responded "What?". (Complt. ¶ 18.) According to the police report, however, the officers observed Williams, saw him as fitting the description of Fields that they had received, approached him and said, "Hey Tim," whereupon Williams reportedly "acknowledged" their identification by responding "What." (Sherwani Decl., Ex. C at 1.) The parties dispute the inflection attributed to plaintiff's "What," response, *i.e.*, whether it connoted puzzlement (plaintiff's version) or affirmation of identity (defendants' version).

Intonation aside, Williams alleges that immediately following this response, the officers, without having identified themselves as such, told Williams to put his hands behind his back. (Complt. ¶ 18.) Despite Williams's subsequent statement that his name was not Tim, Conley

---

[1] According to the police report incident to Williams's arrest, Conley and DellaDonna received information that one Timothy Fields, a narcotics suspect, "was possibly working" at the Western Beef store and went to the store in an attempt to locate and arrest him. (Sherwani Decl., Ex. C at 1.) Although defendants argue that the police report is incorporated by reference in the Complaint, we disagree. Regardless, the factual scenario provided in the report is insufficient to justify dismissal of plaintiff's action at this stage, as discussed *infra*.

allegedly punched Williams in the face, sparking a struggle resulting in the two officers and plaintiff falling to the ground. (*Id.* ¶¶ 18, 19.) The struggle left Williams pinned down, subject to repeated punching by both officers, before being handcuffed. (*Id.*) Plaintiff was placed under arrest and transported to the City's police station for processing, at which time Conley and DellaDonna determined that Williams was in fact not the Timothy Fields whom they were seeking. (*Id.* ¶¶ 19, 20.) Nevertheless, Conley, DellaDonna, and other unknown officers strip searched Williams, held him overnight, and denied him the opportunity to contact his family. (*Id.* ¶ 20.)

The next morning, Williams was arraigned on charges of obstructing governmental administration, pursuant to N.Y. PENAL LAW § 195.05, and resisting arrest, pursuant to N.Y. PENAL LAW § 205.30. (*Id.*) Ultimately, Mount Vernon City Judge William Edwards dismissed both charges, finding that the misdemeanor information was facially insufficient given that none of the essential elements of obstructing governmental administration were met and that Conley and DellaDonna lacked reasonable suspicion to arrest Williams. (*Id.* ¶ 25; Sattler Decl., Ex. A.)

## DISCUSSION

### I. Standard of Review

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). A court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Id.* A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United*

*States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). Generally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995).

"In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." *John v. N.Y.C. Dep't of Corrs.*, 183 F. Supp. 2d 619, 627 (S.D.N.Y. 2002) (Conner, J.) (internal citations omitted). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).

II. **Qualified Immunity**[2]

"The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity is not

---

[2] Qualified immunity is, of course, a defense afforded only to individuals—not municipalities or municipal agencies—acting under color of state law who are sued for federal constitutional violations pursuant to 42 U.S.C. § 1983. *See, e.g., Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000). Therefore, as DellaDonna has been dismissed without prejudice due to lack of service of process, only Conley can seek qualified immunity.

4

merely a defense; it is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." (emphasis in original)). Accordingly, "the availability of qualified immunity ought to be decided by a court at the earliest possible opportunity—preferably at the outset of the case, at which point plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial." *Torres v. Vill. of Sleepy Hollow*, 379 F. Supp. 2d 478, 483 (S.D.N.Y. 2005) (citing *Saucier*, 533 U.S. at 200).

Qualified immunity can be established in three ways: (1) if defendant's acts did not violate a clearly established constitutional right; (2) if it remains unclear as to whether an exception permitted such acts; and (3) if, even though the law was clearly established, "'it was objectively reasonable for [the defendant] to believe that his acts did not violate those rights.'" *Sorensen v. City of New York*, 42 Fed. Appx. 507, 509-10 (2d Cir. 2002) (quoting *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).

### A. <u>Probable Cause and Qualified Immunity</u>

It is well established that an arrest without probable cause is a constitutional violation. *See, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied sub nom. Lillis v. Golino*, 505 U.S. 1221 (1992); *Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994) ("It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."). Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief

that an offense has been committed by the person to be arrested. *See Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). The existence of probable cause is objective—the officer's subjective belief at the time of arrest is irrelevant—and determined by the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Therefore, a probable cause determination must be made by examining "'what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.'" *Fox v. City of New York*, No. 03 Civ. 2268, 2004 WL 856299, at *5 (S.D.N.Y. Apr. 20, 2004) (quoting *Black v. Town of Harrison*, No. 02 Civ. 2097, 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002)).

When examining qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, courts must grant a defendant qualified immunity "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino*, 950 F.2d at 870; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Robison*, 821 F.2d at 921. In situations where probable cause is required, this standard requires something less than actual probable cause. *See Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 247 (S.D.N.Y. 2003) (Conner, J.) This standard has been defined by the Second Circuit as "arguable probable cause," which

> exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be

lawful—should not be held personally liable.

*Id.* at 247-48 (quoting *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)).

### B. Analysis of Probable Cause on Suspected Drug Charges

Conley argues he is entitled to qualified immunity because he (and his partner) conducted only an investigatory stop of a potentially dangerous narcotics suspect in an attempt to confirm their suspicions that plaintiff was in fact the suspect. Conley asserts that plaintiff responded by acknowledging the name "Tim" and only denied being Tim when he realized he was being arrested. According to Conley, plaintiff's refusal to provide the officers with identification and threatening gestures culminating in battery of the officers forced the officers to arrest plaintiff not on drug charges, but rather for obstructing governmental administration.

Unfortunately for Conley, qualified immunity is not established by claiming "the defendant did not do what plaintiff said he did." *Torres*, 379 F. Supp. 2d at 483. The facts asserted in plaintiff's Complaint tell a different story, and on a motion to dismiss, where discovery has not yet occurred, this Court must presume that plaintiff's version of events is true; the "court cannot take into account assertions by the accused officer that contradict the plaintiff's allegations." *Id.* "If plaintiff's version of the facts is wrong and defendant's is correct, then the defendant will prevail, not on the ground of qualified immunity, but because he did nothing wrong." *Id.*

Here, the Complaint alleges that two men approached plaintiff and called out "Tim." Williams's ambiguous response of "What?" in this context, according to the Complaint, constituted only a querulous reaction to someone speaking to him, not an affirmation of identity. Conley then attempted to place Williams under arrest, at which point plaintiff's identity as Tim came under

7

question. Indeed, the police report confirms that immediately after plaintiff's response, Conley grabbed plaintiff while telling him he was under arrest, and during the ensuing struggle informed plaintiff "several times" that he was under arrest.

The facts as alleged in the Complaint do not indicate an investigatory stop occurred. *See People v. Hicks*, 68 N.Y.2d 234, 240, 500 N.E.2d 861, 864, 508 N.Y.S.2d 163, 166 (1986) (examining "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" in determining when arrest is effectuated). Therefore, the question becomes whether plaintiff's ambiguous "What?" response provided probable cause based on the information Conley possessed about Fields. *See Robison*, 821 F.2d at 921. This is a question the Court cannot answer at this stage. We are informed only that defendants had "received information"—from an unidentified source of unknown reliability—that a narcotics suspect was "possibly working" at the Mount Vernon Western Beef grocery store. The police report provides a detailed description of plaintiff, but the Court has no way of knowing whether this description reasonably matched that of the narcotics suspect.

Of course, we respect the fast-paced and potentially dangerous situation the arrest of a narcotics suspect poses to law enforcement personnel. However, the presently known facts leave the reasonableness of the officers' actions in question. Indeed, at present it does not even appear that the officers checked Williams's person for identification after he was in handcuffs nor that they asked the store manager to identify Williams even though the store manager witnessed the arrest. *See Gonzalez v. City of New York*, No. 98 Civ. 6081, 2002 WL 252564, at *6 (S.D.N.Y. Feb. 21, 2002) ("'[W]here a police officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to confirm the suspect's

identity.'" (quoting *Mason v. City of New York*, 949 F. Supp. 1068, 1074 (S.D.N.Y. 1996) in turn quoting *United States v. Valez*, 796 F.2d 24 (2d Cir. 1986) (citations omitted))); *cf. Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (affirming summary dismissal of false arrest claim on ground that there was probable cause because officer was directly advised by store owner, who was present during crime, and knew criminal's identity, and owner's veracity was not in doubt), *cert. denied*, 517 U.S. 1189 (1996); *Peterson v. County of Nassau*, 995 F. Supp. 305, 315 (E.D.N.Y. 1998) ("The police are trained and have more experience than a bystander in ascertaining the identity of possible suspects.").

### C. Analysis of Probable Cause on Obstruction of Governmental Administration Charges

Even if defendants are correct that Williams was taken into custody purely for obstructing governmental administration, *i.e.*, by failing to identify himself, we find that qualified immunity cannot exist on that basis as probable cause is lacking as a matter of law. Although, there is no Fourth Amendment right to refuse identification, any obligation to identify oneself stems from applicable State law. *See Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 187-88 (2004); *see also Marrs v. Tuckey*, 362 F. Supp. 2d 927, 939 (E.D. Mich. 2005). Generally, an officer may stop and inquire as to a suspect's identity where there are specific, objective facts establishing reasonable suspicion of involvement in criminal activity. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 (1968); *People v. McIntosh*, 96 N.Y.2d 521, 525, 755 N.E.2d 329, 331, 730 N.Y.S.2d 265, 267 (2001) (police officers may request information such as identity from an individual where "supported by an objective, credible reason, not necessarily indicative of criminality").

Obstruction of governmental administration requires showing that the accused "intentionally obstructs, impairs or perverts the administration of law . . . or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. PENAL LAW § 195.05. "Plainly, ignoring an officer's request for identification is not a crime, nor does that act supply any such element." *People v. Cameron*, 3 Misc. 3d 1105(A), 787 N.Y.S.2d 679 (N.Y. Crim. Ct., Kings Co. 2004); *see also In re Matter of Davan L.*, 91 N.Y.2d 88, 91, 689 N.E.2d 909, 910, 666 N.Y.S.2d 1015, 1016 (1997) (finding mere words alone not enough to trigger the "physical force or interference" language of the statute). In fact, "the failure to stop or co-operate by identifying oneself or answering questions [cannot] be the predicate for an arrest absent other circumstances constituting probable cause." *People v. Howard*, 50 N.Y.2d 583, 591-92, 408 N.E.2d 908, 914, 430 N.Y.S.2d 578, 585 (1980). In addition, a conviction for obstructing governmental administration cannot stand unless it is established that the police officers were engaged in lawful conduct. *See, e.g., People v. Lupinacci*, 191 A.D.2d 589, 590, 595 N.Y.S.2d 76, 77 (2d Dep't 1993). Nor can a conviction for resisting arrest. *See Weyant*, 101 F.3d at 855.

It is clear to this Court that, assuming the facts alleged in the Complaint, the police were not engaged in lawful conduct. Consequently, Conley's present request for qualified immunity must be denied.

### D. Effect on Claims of False Arrest and False Imprisonment

In New York, § 1983-based false arrest claims are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.'" *Hickey v. City*

of New York, No. 01 Civ. 6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov. 29, 2004) (citing *Posr v. Doherty*, 944 F.2d 91, 94 (2d Cir. 1991)). Therefore, this Court must look to the New York State law of false arrest, recognizing that in New York, claims of false arrest are synonymous with those of false imprisonment. *See id.*; *see also Posr*, 944 F.2d at 96.

In order to establish a claim for false arrest, plaintiff must prove: (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Singer*, 63 F.3d at 118. Although probable cause acts as a complete bar to a false arrest claim, *see Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002), here no such finding has been made. *See Miro v. City of New York*, No. 95 Civ. 4331, 2002 WL 1163580, at *3 (S.D.N.Y. June 3, 2002) ("A claim for false arrest or false imprisonment as an unconstitutional deprivation of civil rights under § 1983 may be established only if there was no probable cause to support plaintiff's arrest and detention.").

The Complaint properly alleges the elements for a false arrest claim, including facts negating probable cause for the arrest, and therefore that claim remains. However, there are no allegations in the Complaint that any other police officer was involved in the arrest, and therefore the John Doe defendants must be dismissed as being at most only tangentially involved in the incidents giving rise to this cause of action. *See Kirk v. Metro. Transp. Auth.*, No. 99 Civ. 3787, 2001 WL 258605, at *9 (S.D.N.Y. Mar. 14, 2001).

### III. Claim of Excessive Force

A claim for use of excessive force under § 1983 may be established if the force used was excessive or unreasonable in light of the circumstances. *See Graham v. Connor*, 490 U.S. 386,

11

395-96 (1989); *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). As stated above, in a motion to dismiss, this Court must accept the factual scenario described in the Complaint. Here, plaintiff alleges that Conley, without having identified himself as a police officer and without preceding physical force on plaintiff's part, punched plaintiff in the face. It is further alleged that these actions caused physical injury necessitating medical treatment. Based on these allegations, it does not appear that such force was warranted, or that the injuries are so insignificant as to warrant dismissal. The claim has been adequately pled, and defendants cannot escape the charges simply by alleging a different version of the incident. Where the plaintiff was punched in the face, it is obviously more difficult to establish that the arresting officer acted reasonably. *See Torres*, 379 F. Supp. 2d at 483-84 ("[A]n officer accused of using excessive force will ordinarily not be able to get out of a lawsuit prior to discovery on the ground of qualified immunity."). Thus, Conley's assertion of entitlement to qualified immunity on this claim must likewise fail. However, the Complaint does not allege that any other police officer exerted force against plaintiff. Consequently, the claims against the John Doe defendants are dismissed. *See Kirk*, 2001 WL 258605, at *9.

### IV. <u>Malicious Prosecution</u>

In New York, § 1983-based malicious prosecution claims, like false arrest claims, are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.'" *Hickey*, 2004 WL 2724079, at *6 (citing *Posr*, 944 F.2d at 94). Accordingly, this Court looks to the New York State law of malicious prosecution, which requires a plaintiff to prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and

(4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotations omitted). "There must be 'a showing of some deliberate act punctuated with awareness of "conscious falsity" to establish malice.'" *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2005) (quoting *Caldarola v. DeCiuceis*, 142 F. Supp. 2d 444, 452 (S.D.N.Y. 2001)).

Here, the individuals directly associated with prosecution of the obstruction of governmental administration charge have been dismissed by stipulation. Moreover, there is no allegation that the City or Department were involved in the prosecution in any way, as all decisions from arraignment on are alleged to have been made by the Westchester County District Attorney's office. To the extent plaintiff's Complaint accuses Conley of malicious prosecution, that claim too must be dismissed as the Complaint makes no mention that Conley had any involvement with plaintiff's case after confirming plaintiff's actual identity and placing or having him placed in holding overnight. "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 561 (S.D.N.Y. 2003) (citing *Raschid v. News Syndicate Co.*, 239 A.D. 289, 267 N.Y.S. 221, 225 (1st Dep't 1933) ("A charge and an arrest do not amount to a prosecution . . . . [Malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously, and without probable cause, instituted against the plaintiff, and has been terminated in the plaintiff's favor.") (internal quotations and citation omitted), *aff'd*, 265 N.Y. 1, 191 N.E. 713 (1934)).

Therefore, the malicious prosecution action is dismissed as to all defendants. This includes the John Doe defendants, as any officer(s) involved in transporting plaintiff to the Department's station and/or processing him could not be involved in his prosecution.

## V. *Monell* Liability

In order to hold a municipality or municipal agency liable under § 1983, a plaintiff must allege a link between the constitutional violation and an identifiable municipal policy, practice or custom. *See, e.g., Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). The theory of *respondeat superior* is insufficient, and mere assertions of a custom or policy, in the absence of factual allegations or inferences, are likewise insufficient to support a claim. *Zahra v. Town of Southold*, 48 F.3d 674, 658 (2d Cir. 1995).

In the instant action, plaintiff's Complaint contains only conclusory allegations regarding the existence of a "formal or de facto policy" on the part of the City with respect to the alleged constitutional violations of which they complain. Plaintiff's argument that discovery is needed to acquire factual information regarding the specific policy or custom is not availing. They have not

alleged *any* facts tending to support an inference that a formal practice or custom endorsed by the City actually existed. Therefore, the § 1983 actions against the City and the Department are dismissed.

## VI. Section 1981, Section 1985(3) and Fourteenth Amendment Claims

The Complaint alleges causes of actions rooted in 28 U.S.C. §§ 1981 and 1985(3), as well as the Fourteenth Amendment. Section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers ... efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Mian v. Donaldson, Lufkin & Jenrett Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). A § 1981 claim requires plaintiff to allege: (1) that he is a member of a racial minority; (2) that defendants had an intent to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc. *See id.* To survive a motion to dismiss, plaintiff's complaint must assert "that the defendant[s'] acts were purposefully discriminatory ... and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc). The Complaint is devoid of any assertions regarding racial discrimination. Indeed, the Complaint fails even to mention the plaintiff's race, let alone that of the police officers or district attorneys. Accordingly, no § 1981 action can stand.

Plaintiff's equal protection claim fails for the same reason. "To establish an equal protection violation, plaintiff must prove purposeful discrimination directed at an identifiable or suspect class." *Kramer v. City of New York*, No. 04 Civ. 0106, 2004 WL 2429811, at *5 (S.D.N.Y. Nov. 1, 2004)

(internal citations omitted). Here, Williams "made no such class allegation. Instead, Plaintiff's claim is based on the particular circumstances of [his] arrest." *Id.*

For similar reasons, plaintiff's § 1985 cause of action also is defective. Narrower in scope than § 1983, *see Blankman v. County of Nassau*, 819 F. Supp. 198, 205 (E.D.N.Y. 1993), under § 1985(3) a plaintiff must plead "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States.'" *Fox*, 2004 WL 856299, at *9 (quoting *Mian*, 7 F.3d at 1087-88). "A plaintiff states a viable cause of action under § 1985 [excepting clause 1 of § 1985(2)] only by alleging a deprivation of his rights on account of his membership in a particular class of individuals." *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987) (modification in original). Here, plaintiff makes no allegation regarding class membership. Accordingly, these claims, to the extent plaintiff has not abandoned them, are dismissed.

## VII. Claims for Violation of State Law and State Constitution

### A. Intentional Infliction of Emotional Harm

Claims for intentional infliction of emotional distress are "highly disfavored" claims under New York law. *Torres*, 379 F. Supp. 2d at 482. To establish such a cause of action, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Howell v. N.Y. Post Co.*, 81 N.Y.2d

115, 121, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (1993). We do not see how, even assuming the truth of the Complaint's allegations, Conley's and DellaDonna's actions could be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983) (quoting Restatement of Torts, Second, § 46, subd. [1], comment d). We find that the facts of plaintiff's allegations of false arrest and excessive force do not go beyond all possible bounds of decency. Thus, this cause of action is dismissed.

### B. New York State Constitutional Claims

For the same reasons as the dismissal of the equal protection claims above, as well as failure to plead a sufficient bases for the claims, plaintiff's Article I, sections 1, 5 and 11 are dismissed. However, the claims for violations of Article I, sections 6 and 12 remain, in accordance with the probable cause reasoning, discussed *supra*.[3]

### CONCLUSION

For all of the foregoing reasons, the motion to dismiss of defendant Mount Vernon Police Officer Conley is granted with respect to the claims for malicious prosecution, intentional infliction of emotional distress and violations of 42 U.S.C. §§ 1981 and 1985(3) and New York State

---

[3] Although the federal claims against the City and the Department are dismissed, this Court continues to exercise supplemental jurisdiction over these defendants because judicial economy is better served by retaining jurisdiction over the remaining state law claims where they are based on the same circumstances as the remaining federal claims against defendant Conley. *See Bordeau v. Vill. of Deposit*, 113 F. Supp. 2d 292, 303 (N.D.N.Y. 2000).

Constitution Article I, sections 1, 5 and 11 and is denied with respect to the claims for false arrest and excessive force under 42 U.S.C. § 1983 and the state law claims under New York State Constitution Article I, sections 6 and 12. The motion to dismiss of the City of Mount Vernon and Mount Vernon Police Department is granted with respect to all federally-based claims as well as the state law claim for intentional infliction of emotional distress and is denied with respect to the state law claims under New York State Constitution Article I, sections 6 and 12. The claims against defendants Mount Vernon Police Commissioner Bernice Kennedy, Mount Vernon Police Officer DellaDonna and Mount Vernon Police Officers John Doe 1-5 are dismissed without prejudice.

SO ORDERED.

Dated: White Plains, New York
April 14, 2006

*William C. Conner*
Sr. United States District Judge